2024 IL App (1st) 210688-UB

No. 1-21-0688

Order filed January 24, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 3643 |
| | ) | |
| FREDERICK SMITH, | ) | Honorable |
| | ) | Thomas Joseph Hennelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Hoffman and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Second-stage dismissal of defendant's postconviction petition reversed, where defendant rebutted the presumption that postconviction counsel provided reasonable assistance because the record demonstrates that counsel did not fulfill his obligations under Illinois Supreme Court Rule 651(c).

¶ 2    The circuit court dismissed defendant Frederick Smith's *pro se* petition for postconviction

relief at the second stage of the proceedings under the Post-Conviction Hearing Act (Act) (725

ILCS 5/122-1 *et seq.* (West 2020)). Originally, we affirmed this ruling in *People v. Smith*, 2022 IL App (1st) 210688-U. Defendant then petitioned the supreme court for leave to appeal. On September 27, 2023, the supreme court denied leave to appeal. In so doing, however, the supreme court issued to us a supervisory order, directing us to vacate our judgment and consider the effect of *People v. Addison*, 2023 IL 127119, on the issue of whether defendant received reasonable assistance of postconviction counsel and determine if a different result is warranted.

¶ 3    Accordingly, we vacated our judgment in *Smith*, 2022 IL App (1st) 210688-U, in a separate order.

¶ 4    On appeal, defendant argues that he made a substantial showing that appellate counsel rendered ineffective assistance by failing to raise on direct appeal trial counsel's failure to (1) investigate whether the victim's death was a result of the intervening cause of medical malpractice, and (2) challenge the trial court's failure to remove a prospective juror for lying under oath during *voir dire*. In the alternative, defendant asks this court to remand for second-stage proceedings with orders for the appointment of new counsel because postconviction counsel filed a defective certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and provided unreasonable assistance.

¶ 5    In light of *Addison*, we reverse the circuit court's judgment and remand the cause for compliance with Rule 651(c).

¶ 6                                    I. BACKGROUND

¶ 7     Defendant was charged with the first degree murder of Lamar Goodwin and unlawful use of a weapon by a felon. The charges arose out of defendant's alleged fatal shooting of the victim with a firearm.

¶ 8     During pretrial proceedings, the State moved *in limine* to preclude the defense from referencing the wrongful death lawsuit that the victim's family had filed against the hospital that had provided emergency treatment to the victim after the shooting. The State argued that the civil suit was not relevant to defendant's guilt or innocence. The defense objected and argued that the lawsuit was probative of the Goodwin family's bias and motive to testify falsely in their attempt to profit from the victim's death. The trial court granted the State's motion *in limine*.

¶ 9     The evidence presented at trial showed that, on an evening in May 2006, witnesses observed defendant, who was an acquaintance, encounter the victim outside a public housing building in Chicago. Defendant and the victim argued. Then defendant pointed a gun at the victim, fired the gun, and fled from the area. The victim was conscious when he was admitted to the hospital. Blood was collecting in his abdomen, which necessitated emergency surgery. His condition did not improve following surgery, and he remained hospitalized in a medically induced coma until he died about three months later. The autopsy revealed that one bullet entered at the victim's left hip, traveled left to right and downward, and resulted in the fracturing of the victim's pelvic bone. The bullet was recovered behind the victim's femur. The medical examiner concluded that the victim died as a consequence of a gunshot wound to the hip and classified the manner of death as a homicide.

¶ 10    The jury found defendant guilty of first degree murder and also found that he personally discharged a firearm that proximately caused the victim's death.

¶ 11    Prior to sentencing, defendant filed a *pro se* motion for a new trial and to dismiss his attorney. Defendant argued that trial counsel was ineffective for, *inter alia*, failing to object to the State's motion *in limine* to bar the defense from mentioning the Goodwin family's pending wrongful death lawsuit against the hospital. Defendant also argued that counsel failed to adequately investigate the exact cause of the victim's death.

¶ 12    At a subsequent court date, the trial court considered the allegations of ineffectiveness included in defendant's *pro se* filing and questioned defense counsel about various facets of her representation. Regarding the State's motion *in limine* to bar any reference to the Goodwin family's wrongful death lawsuit, defense counsel responded that she had objected to that motion and cited the trial court's decision overruling her objection as one of the key issues in her motion for a new trial. Regarding defendant's claim that counsel failed to adequately interview the medical examiner and investigate the possibility that the victim's death was caused by something other than a gunshot wound, defense counsel testified that she did not hire an expert on the causation issue. Defense counsel also testified that she received and reviewed the victim's medical records, she and her investigator met with the medical examiner prior to trial, and she performed legal research on the causation issue. The trial court concluded that defendant's *pro se* allegations of ineffectiveness lacked merit and denied his *pro se* motion.

¶ 13    Thereafter, the trial court denied the motion for a new trial filed by defense counsel. Specifically, the court rejected counsel's claim that the court's ruling to bar any reference to the

wrongful death lawsuit was erroneous because the lawsuit did not provide the victim's relatives with a bias or motive to testify that defendant was the killer. After considering the evidence presented in aggravation and mitigation, the court sentenced defendant to a total of 55 years' imprisonment, which included a mandatory 25-year firearm enhancement.

¶ 14    On appeal, defendant argued that (1) the State failed to prove his guilt beyond a reasonable doubt, (2) the State made improper comments during closing argument, (3) the trial court failed to properly admonish prospective jurors of the relevant governing principles of law, and (4) the trial court improperly sentenced defendant to two counts of first degree murder. This court ordered that the mittimus be corrected to reflect a single conviction for first degree murder and affirmed the judgment of the trial court in all other respects. *People v. Smith*, 2012 IL App (1st) 100706-U.

¶ 15    In February 2013, defendant filed the instant *pro se* petition for postconviction relief. A police report and trial transcripts were attached to his petition. Relevant to this appeal, he argued that he was denied his right to effective assistance of counsel based on appellate counsel's failure to challenge trial counsel's failure to disqualify juror J.T. for lying under oath during *voir dire*. Defendant also argued that trial counsel failed to investigate the possibility of the defense that the victim's death resulted from medical malpractice rather than a fatal gunshot wound. Specifically, defendant referred to the attached police report, which stated that the victim was in stable condition, and argued that trial counsel, instead of relying on the medical examiner's statements, should have hired an independent expert to review the victim's medical records to ascertain whether he died from some sort of medical malpractice, like an overdose of the drugs used to place

him in the medically induced coma. Defendant included a motion for funds to retain an expert witness to substantiate his alternative cause of death claim.

¶ 16    In his petition, defendant stated that he did not have the necessary evidence to fully support his alternative cause of death claim because he did not have funds to hire an independent expert and did not have internet access to obtain copies of medical studies and the medical malpractice lawsuit filed by the victim's family. Despite these omissions, defendant asserted that the record contained sufficient evidence to show an arguable legal and factual basis to support his alternative cause of death theory because the victim lived for three months after he had been shot, the victim was conscious when he arrived at the hospital but never regained consciousness after he was placed in the medically induced coma, and the medical examiner's testimony that the recovered bullet was encased in a fibrous sack with "no hemorrhage around" it indicated, according to defendant, that the victim's body was healing itself. Defendant couched this ineffective trial counsel claim in a claim of ineffective assistance of appellate counsel even though defendant thought that this claim could not have been raised on direct appeal.

¶ 17    After 90 days, defendant's petition was docketed for second-stage postconviction proceedings, and postconviction counsel was appointed to represent him. While this matter remained pending for several years, postconviction counsel represented to the court that he was investigating the matter and was close to filing a supplemental postconviction petition. Ultimately, however, counsel elected not to file a supplemental petition. In January 2019, counsel filed a Rule 651(c) certificate, attesting that he had consulted with defendant to ascertain his contentions of deprivations of constitutional rights and "obtained and examined the record of proceedings *prior*

*to, and including, the time the plea of guilty was entered*, and sentencing in this case." (Emphasis added.) Counsel's statement, however, was erroneous because this case did not involve a guilty plea. Counsel also attested that he determined that a supplemental petition for postconviction relief was not necessary because defendant's *pro se* petition adequately set forth his claims of deprivation of his constitutional rights.

¶ 18    In June 2019, the State moved to dismiss the petition, arguing, *inter alia*, that defendant failed to make a substantial showing that his constitutional right to effective assistance of counsel was violated because counsel was not unreasonable for not seeking to disqualify juror J.T. from jury service for failing to disclose prior citations for speeding and driving on a suspended license. The State also argued that defendant failed to show that J.T.'s participation on the jury prejudiced defendant. Further, the State argued that defendant's claim that counsel failed to investigate and challenge the victim's cause of death (1) was forfeited because it was never addressed on direct appeal, (2) was conclusory because defendant failed to submit medical studies and supporting affidavits, (3) lacked merit because it was rebutted by the record, which showed that trial counsel did investigate the causation defense and the medical examiner concluded that the victim died from the gunshot wound, and (4) failed to show that appellate counsel's performance was deficient and prejudiced defendant. Postconviction counsel did not file a response to the State's motion.

¶ 19    In December 2019, defendant moved *pro se* for leave to file a petition for a *writ of habeas corpus ad testificandum*, requesting that he be brought into court for the hearing on the motion to dismiss and stating that he had important information to bring to the attention of the court and postconviction counsel.

¶ 20    In January 2020, the court asked postconviction counsel about defendant's *pro se* motion, and postconviction counsel indicated that he had just been made aware of the motion that day and would write to and telephone defendant to ascertain the important information to which he was referring. The court continued the matter.

¶ 21    In February 2020, postconviction counsel stated that defendant was alleging that there may be additional witnesses, but defendant did not have first-hand information. Specifically, defendant said he had received information from another inmate that another unknown inmate might have some valuable information on defendant's case. Postconviction counsel informed the court that he sent two letters to the known inmate and was waiting for a response. The court continued the matter.

¶ 22    In July 2020, the court heard argument on the State's motion to dismiss. The State argued, *inter alia*, that the issues of improper closing argument and improper admonishments during *voir dire* were *res judicata*. The State also argued that the intervening cause of death issue was forfeited, conclusory, and rebutted by the record based on the medical examiner's testimony and the trial court's posttrial questioning of defense counsel regarding her investigative process. The State acknowledged that the causation argument was couched in a claim of ineffective assistance of appellate counsel, but argued that appellate counsel did not render ineffective assistance by deciding not to raise meritless arguments.

¶ 23    In response, postconviction counsel stated that he had communicated with defendant about the existence of newly discovered evidence but nothing materialized. Postconviction counsel stated that the State correctly argued that the appellate court had addressed defendant's claims

regarding improper closings arguments, the improper *voir dire* admonishments, and the intervening cause of death issue. However, postconviction counsel's statement regarding the intervening cause of death issue was erroneous; the appellate court never addressed that issue. Postconviction counsel then stated that the "one issue" the appellate court did not address was the jury selection process, so counsel focused his argument on trial counsel's failure to disqualify juror J.T. for lying under oath during *voir dire*. The court continued the matter for ruling. In the interim, postconviction counsel prematurely filed a notice of appeal and incorrectly averred that defendant had received a 30-year prison sentence.

¶ 24     On April 30, 2021, the trial court granted the State's motion to dismiss defendant's petition, finding that his claims of ineffective assistance of counsel failed to make the required showing of a substantial deprivation of constitutional rights. Defendant timely appealed.

¶ 25                                    II. ANALYSIS

¶ 26     This appeal is governed by the framework set forth in the Post-Conviction Hearing Act (Act). See 725 ILCS 5/122-1 *et seq*. (West 2020). The Act provides a mechanism pursuant to which criminal defendants who have suffered a substantial violation of their constitutional rights at trial may obtain relief. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001).

¶ 27     Postconviction proceedings are not a substitute for a direct appeal; rather, the Act simply "offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. As such, all issues that were previously decided on direct appeal are *res judicata* and all issues that could have been raised on direct appeal are forfeited. *People v. Allen*, 2015 IL 113135, ¶ 20. To prevail on a claim for postconviction relief

filed pursuant to the Act, "a defendant must show that he has suffered a substantial deprivation of his federal or state constitutional rights in the proceedings that produced the conviction or sentence being challenged." *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006).

¶ 28 The Act provides for three distinct stages of review. *People v. Knapp*, 2020 IL 124992, ¶ 43. At the second stage, which is at issue in this appeal, counsel may be appointed to represent the defendant, and the State may respond to the filing with an answer or a motion to dismiss. 725 ILCS 5/122-2.1, 122-4, 122-5 (West 2020); *People v. Greer*, 212 Ill. 2d 192, 204 (2004). The defendant bears the heightened burden of making a substantial showing of a constitutional violation. *Allen*, 2015 IL 113135, ¶ 22. To ascertain whether the defendant has satisfied this burden, the trial court will examine the legal sufficiency of the petition and any accompanying documentation and ascertain "whether the allegations in the petition, liberally construed in favor of the defendant and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31. Although the court does not engage in any fact-finding or make credibility determinations at this stage, the court need not accept as true facts that are "positively rebutted by the record." *People v. Johnson*, 2017 IL 120310, ¶ 14. Only if the defendant satisfies his burden of making a substantial showing of a constitutional violation will the petition be advanced to a third-stage evidentiary hearing. *Allen*, 2015 IL 113135, ¶ 22. Absent such a showing, the petition will be dismissed. *People v. Bailey*, 2017 IL 121450, ¶ 18. The second-stage dismissal of a postconviction petition is subject to *de novo* review. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 29 As noted above, on appeal defendant asserts both that his petition was improperly dismissed at the second stage because his petition made a substantial showing that he was denied

his constitutional right to the effective assistance of counsel on direct appeal and that he was denied his statutory right to the reasonable assistance of postconviction counsel. While in our prior order we addressed both issues, considering our supreme court's supervisory order and its opinion in *Addison*, 2023 IL 127119, we now find the latter issue to be completely dispositive of this appeal.

¶ 30    With respect to his argument that he was denied his statutory right to the reasonable assistance of postconviction counsel, defendant contends that postconviction counsel (1) let defendant's "petition languish for years, seeking continuances, all the while representing to the court that he was about to amend the petition any day now, without ever amending or supplementing the petition"; (2) filed a deficient certificate under Illinois Supreme Court Rule 651(c) and failed to certify that he examined the record of proceedings at trial; (3) failed to substantially comply with Rule 651(c) because he failed to argue in support of defendant's intervening causation claim under the mistaken belief that the claim was barred by *res judicata*; (4) failed to shape the causation claim with readily available information about the wrongful death lawsuit and failed to pursue defendant's motion to appoint an independent expert to examine the causation issue; and (5) failed to amend the petition with an affidavit from defendant about the new and important information from witnesses because counsel mistakenly believed that hearsay was not admissible at a second-stage postconviction proceeding.

¶ 31    Although criminal defendants are afforded the constitutional right to effective assistance of both trial and appellate counsel, there is no corresponding constitutional right to effective assistance of postconviction counsel. *People v. Johnson*, 2018 IL 122227, ¶ 16. Instead, the right to appointed counsel at the second-stage of postconviction review is "a matter of legislative grace."

*People v. Custer*, 2019 IL 123339, ¶ 30. "The required quantum of assistance" required of postconviction counsel "has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Id*. (quoting *Pendleton*, 223 Ill. 2d at 472). Rule 651(c) delineates the "sharply limit[ed]" obligations that a postconviction attorney must fulfil to provide reasonable assistance to a defendant. *Id*. ¶ 32. That rule, provides, in pertinent part as follows:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 32 Strict compliance with the rule is not required. Rather, postconviction counsel fulfills his or her obligations by substantially complying with the rule. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 30. The act of filing a 651(c) certificate creates a rebuttable presumption that the defendant received reasonable assistance of postconviction counsel. *People v. Smith*, 2022 IL 126940, ¶ 29. Accordingly, where postconviction counsel files a certificate attesting that he or she has fulfilled the obligations set forth in Rule 651(c), the defendant then bears the burden of demonstrating counsel's lack of substantial compliance. *Collins*, 2021 IL App (1st) 170597, ¶ 31. The presumption of compliance may be rebutted by the record (*People v. Marshall*, 375 Ill. App. 3d 670, 680 (2007)), or by demonstrating that postconviction counsel did not make all necessary

amendments to the *pro se* petition, including amendments that are necessary to overcome procedural bars (*Addison*, 2023 IL 127119, ¶ 21). However, "Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Greer*, 212 Ill. 2d at 205. Furthermore, "all postconviction petitioners are entitled to have counsel comply with the limited duties of Rule 651(c) before the merits of their petitions are determined." *Addison*, 2023 IL 127119, ¶ 37. Postconviction counsel's compliance with Rule 651(c) is reviewed *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 33                    A. Delay in Filing the 651(c) Certificate

¶ 34    First, we address defendant's challenge to postconviction counsel's delay in filing his 651(c) certificate, observing that counsel represented him for several years before filing the document. Although this court has expressed disfavor toward lengthy second-stage proceedings (see *People v. Kelly*, 2012 IL App (1st) 101521, ¶ 40), Rule 651(c) by its express terms imposes no time frame pursuant to which postconviction counsel must file a certificate. When construing postconviction counsel's Rule 651(c)'s obligations, the Illinois Supreme Court has declined to impose obligations other than those explicitly set forth in the plain language of the rule. See *Smith*, 2022 IL 126940, ¶ 32 (construing the plain language of the rule and concluding that it "imposes no timeframe in terms of how soon before the hearing on the State's motion to dismiss the certificate must be filed"); *People v. Turner*, 187 Ill. 2d 406, 411 (1999) (construing the plain

language of the rule and concluding that it did not require an appointed attorney to consult with a petitioner a certain number of times).

¶ 35     Defendant cites no authority in which a postconviction attorney's performance was found to be unreasonable solely due to the length of time it took counsel to either amend a *pro se* petition or file a 651(c) certificate. We conclude that the length of time counsel took to file the certificate does not, standing alone, provide this court with a basis to find postconviction counsel's representation unreasonable, particularly where counsel repeatedly referenced the fact that he was in regular contact with defendant during the delay. Similarly, the mere fact that postconviction counsel filed a premature notice of appeal does not support a finding of unreasonable representation because a timely notice of appeal was ultimately filed, which preserved defendant's appellate rights. *Cf. People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 35 (finding that postconviction counsel's representation was unreasonable in a number of respects, including counsel's failure to file a proper notice of appeal).

¶ 36                              B. The Rule 651(c) Certificate

¶ 37     Defendant argues that postconviction counsel filed a facially defective Rule 651(c) certificate. The certificate provided as follows:

> "1. I have consulted with the petitioner, Frederick Smith, by phone, mail, electronic means or in person to ascertain his contentions of deprivations of constitutional rights;
>
> 2. I have obtained and examined the record of proceedings *prior to, and including, the time the plea of guilty was entered*, and sentencing in this case.

3. I have not prepared a Supplemental Petition for Post-Conviction Relief as the petitioner's previously-filed *pro se* petition for post-conviction relief adequately sets forth the petitioner's claim of deprivation of his constitutional rights." (Emphasis added.)

Defendant argues that postconviction counsel's 651(c) certificate is facially defective because it states that he reviewed records pertaining to the "plea of guilty" even though no such records exist in this case since defendant never entered a guilty plea and instead proceeded by way of a jury trial.

¶ 38    The State responds that postconviction counsel's reference to a guilty plea is a typographical error and does not establish that he failed to comply with his obligations pursuant to Rule 651(c). The State cites *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 14, for the proposition that the mere fact that postconviction counsel's certificate contained an error and referenced a different supreme court rule did not establish that counsel failed to comply with the requirements of Rule 651(c).

¶ 39    Here, despite postconviction counsel's erroneous reference in his certificate to a guilty plea, the record establishes that postconviction counsel knew this case proceeded by way of a jury trial instead of a guilty plea. Specifically, the transcripts of the hearing on the State's motion to dismiss show that postconviction counsel focused his argument on the jury selection process, which supports the conclusion that the record that postconviction reviewed was, in fact, the jury trial record. In addition, the record reflects that counsel repeatedly advised the court that he had conferred with defendant about his postconviction petition. Accordingly, we presume that

postconviction counsel provided reasonable assistance under Rule 651(c), and defendant has the burden of demonstrating otherwise.

¶ 40                              C. Intervening Cause of Death Claim

¶ 41    Defendant argues that he has rebutted the presumption that postconviction counsel fulfilled his Rule 651(c) responsibilities by citing several examples in the record to demonstrate counsel's unreasonable representation. First, we address defendant challenge to postconviction counsel's representation during the hearing on the State's motion to dismiss the petition and his failure to address the substantive merit of defendant's intervening cause of death claim. Defendant observes that counsel mistakenly conceded that defendant's causation claim had been addressed on direct appeal and was thus barred by *res judicata*. Defendant argues that counsel's misstatement shows that he failed to review the State's motion to dismiss and the direct appeal proceedings and thus failed to provide defendant with the reasonable assistance to which he was entitled.

¶ 42    According to the record, postconviction counsel erroneously conceded that defendant's causation claim had been addressed on direct appeal. Counsel then focused his argument on the jury selection process as the "one issue" the appellate court did not address. Accordingly, the record establishes that counsel failed to adequately present defendant's constitutional claim of ineffective assistance of appellate counsel for failing to challenge trial counsel's failure to investigate whether the victim's death was the result of the intervening cause of medical malpractice. See *People v Owens*, 139 Ill. 2d 351, 358-59 (1990) (the Act cannot serve its purpose properly unless postconviction counsel ascertains the basis of an indigent defendant's complaints, shapes those complaints into an appropriate legal form, and presents them to the court).

¶ 43    We find instructive *People v. Shortridge*, 2012 IL App (4th) 100663, ¶ 6, where appointed postconviction counsel failed to amend the *pro se* petition and "confess[ed] the motion to dismiss." The appellate court held that counsel's act of "confessing the motion to dismiss," was contradictory and did not fall within the reasonable level of assistance guaranteed under the Act. *Id.* ¶¶ 14-15. Citing *Geer*, the court stated that "[i]f counsel, in fact, found the allegations 'nonmeritorious,' even with any necessary amendments, then he should have moved to withdraw as counsel, not confess the State's motion to dismiss." *Id.* ¶ 14. In *Shortridge*, counsel neither stood on the *pro se* petition nor moved to withdraw but, instead, pursued a third, impermissible alternative—confessing the State's motion to dismiss. Here, although postconviction counsel chose to stand on the *pro se* petition, explaining that it adequately set forth defendant's arguments, counsel then made the contradictory and erroneous concession that the causation claim was barred by *res judicata*.

¶ 44    We recognize that the issue of whether counsel provides unreasonable assistance when he stands on a *pro se* petition that is frivolous as written and does not request leave to withdraw is currently pending before our supreme court. See *People v. Huff*, 2022 IL App (1st) 201278-U, *leave to appeal allowed*, No. 128492 (Sept. 28, 2022). However, we need not take a position on that issue here because the record rebuts the presumption of reasonable assistance. All defendants are entitled to have postconviction counsel comply with the limited duties of Rule 651(c) before the merits of their petitions are determined. *Addison*, 2023 IL 127119, ¶ 37. That did not occur in this case.

¶ 45    We are precluded from considering the merits of defendant's underlying petition when counsel does not comply with Rule 651(c). *Id.* ¶ 33. Doing so would require us to speculate as to

whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c). See *Turner*, 187 Ill. 2d at 416. Moreover, such speculation would render the appointment of counsel in postconviction proceedings "an empty formality." *Id*. at 417; see *People v. Suarez*, 224 Ill. 2d 37, 51 (2007) ("Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized").

¶ 46 On this record, we conclude that defendant has rebutted the presumption that postconviction counsel provided reasonable assistance during the second-stage proceedings below that was created by filing the Rule 651(c) certificate. Postconviction counsel therefore failed to substantially comply with the duties imposed by Rule 651(c). "[W]hen appointed counsel does not adequately fulfill his or her duties under Rule 651(c), a remand is required regardless of whether the petition's claims have merit." *Addison*, 2023 IL 127119, ¶ 42.

¶ 47 Considering the decision in *Addison* and postconviction counsel's failure to substantially comply with the duties imposed by Rule 651(c), we must remand this case for further second-stage proceedings. " 'Petitioner must be given an opportunity to replead his post-conviction petition with the benefit of reasonable assistance of counsel.' " *Id*. ¶ 41 (quoting *Turner*, 187 Ill. 2d at 417). Accordingly, we need not address defendant's remaining contentions of unreasonable assistance of counsel. " '[W]e express no opinion on the merit of the claims in petitioner's postconviction petition or even whether an evidentiary hearing on his claims would be appropriate in this case. On remand, the trial court will have an opportunity to evaluate the claims in petitioner's post-

conviction petition once petitioner's counsel has made any amendments to the petition which are necessary for an adequate presentation of petitioners contentions.' " *Id.* (quoting *Turner*, 187 Ill. 2d at 417).

¶ 48    Finally, defendant has requested that new postconviction counsel be appointed to represent him on remand. We agree with and grant that request. *Schlosser*, 2017 IL App (1st) 150355, ¶ 36 (postconviction counsel's failure to provide a reasonable level of assistance requires appointment of new counsel on remand).

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, the judgment of the circuit court is reversed, and this matter is remanded for further second-stage postconviction proceedings with the appointment of new counsel and compliance with Rule 651(c).

¶ 51    Reversed and remanded.